No. 101,207
No. 101,345

STATE OF KANSAS, *Appellee*, v. JARED OEHLERT, *Appellant*.

(224 P.3d 561)

Opinion filed February 19, 2010.

*Rachel Pickering*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Christina Trocheck*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

DAVIS, C.J.: On April 18, 2008, Jared Oehlert pled guilty and was convicted of rape in violation of K.S.A. 21-3502(a)(2) which carries with it a mandatory life sentence or minimum of not less

than 25 years and postrelease supervision for life pursuant to K.S.A. 21-4643 and K.S.A. 2008 Supp. 22-3717. The district court granted his downward durational motion, and he was sentenced to 60 months with the Department of Corrections and postrelease supervision for life.

For the first time on appeal, Oehlert challenges his postrelease supervision for life as cruel or unusual punishment under the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. His argument is contrary to our recent decisions; therefore, we reject his argument and affirm his sentence.

## FACTS AND PROCEDURAL BACKGROUND

Under the plea agreement, the State dismissed an aggravated sodomy charge and agreed to recommend a durational departure to a severity level one on the sentencing grid in exchange for Oehlert's plea of guilty to one count of rape charged as an off-grid felony. Oehlert filed a motion for durational departure.

In support of his motion, Oehlert stated: The victim was a willing participant and aggressor in the criminal conduct; the victim consented to sexual intercourse; the victim lied to law enforcement, stating that, "they were not having sex, they were just fooling around"; the degree of harm or loss attributed to the crime was significantly less than typical for such offense; the age difference between him and the victim was approximately 6 years; the victim supported a reduced sentence; he has ADD and ADHD rendering him emotionally immature; he accepted responsibility at his initial interview with law enforcement and in court; he was young enough to address and treat the underlying issues that led to his conduct; and the State had recommended more lenient sentences in other sex offense cases similar to Oehlert's.

The State asked the district court to impose a sentence of 234 months pursuant to the sentencing guidelines, along with both lifetime sex offender registration and lifetime postrelease supervision. Oehlert asked the district court for a sentence of 12 to 60 months.

The district court granted Oehlert's motion for durational departure, sentenced him to 60 months with the Department of Cor-

rections and lifetime postrelease supervision, and ordered him to register as a sex offender for life. In support of this order, the district court listed a number of substantial and compelling reasons it found to grant its departure, including: Oehlert accepted responsibility for his actions by cooperating with law enforcement, by pleading guilty, and by expressing remorse at his sentencing hearing; the State recommended a durational departure to a guideline sentence; Oehlert had no prior convictions for a sex offense; the victim consented to the sexual intercourse and voluntarily participated in the criminal conduct; the degree of harm or loss attributed to the current crime was significantly less than typical; and Oehlert had learning disabilities, emotional immaturity, and a complicated and dysfunctional family history.

Oehlert filed a timely appeal. This court has jurisdiction under K.S.A. 22-3601(b)(1) (conviction of an off-grid crime).

## CRUEL AND UNUSUAL PUNISHMENT

Constitutional issues, in general, cannot be raised for the first time on appeal. *State v. Ortega-Cadelan*, 287 Kan. 157, 159, 194 P.3d 1195 (2008). However, this court has recognized three exceptions to the general rule: "(1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reasons." *Ortega-Cadelan*, 287 Kan. at 159; see *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 (1967). In *Ortega-Cadelan*, this court fully reviewed the *Pierce* exceptions, and our recent decisions have refused to consider the merits of this issue when a cruel and unusual punishment challenge is raised for the first time on appeal. *Ortega-Cadelan*, 287 Kan. 157, Syl. ¶ 2; see *State v. Mondragon*, 289 Kan. 1158, Syl. ¶ 2, 220 P.3d 369 (2009); *State v. Seward*, 289 Kan. 715, 718, 217 P.3d 443 (2009); *State v. Easterling*, 289 Kan. 470, 485-87, 213 P.3d 418 (2009); *State v. Spotts*, 288 Kan. 650, Syl. ¶ 1, 206 P.3d 510 (2009); *State v. Thomas*, 288 Kan. 157, Syl. ¶ 1, 199 P.3d 1265 (2009).

Oehlert correctly notes that the proper analysis for whether a punishment is cruel or unusual is controlled by the three-prong test stated in *State v. Freeman,* 223 Kan. 362, 574 P.2d 950 (1978). The *Freeman* test states:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *Freeman,* 223 Kan. at 367.

In recent opinions, we have held that the *Freeman* factors include both legal and factual inquiries and that no single factor controls the outcome. *Mondragon,* 289 Kan. at 1163; *Seward,* 289 Kan. at 719; *Easterling,* 289 Kan. at 486; *Spotts,* 288 Kan. at 653; *Thomas,* 288 Kan. at 161; *Ortega-Cadelan,* 287 Kan. at 161.

Oehlert argues that the record in this case is sufficient for review; however, he fails to point to district court findings regarding the *Freeman* factors. Instead, he urges that the district court's findings regarding mitigating factors used to support its order for a durational departure are sufficient for this court to conduct a *Freeman* analysis. This court disagrees. "This argument ignores the role of this court: Appellate courts do not make factual findings but review those made by district courts. [Citation omitted.]" *Thomas,* 288 Kan. at 161.

In *Seward,* this court remanded the case to the district court so that factual findings on the issue of cruel and unusual punishment could be made. In that case, the defendant mentioned a cruel and unusual punishment argument during plea negotiations, in his motion for downward departure, and during his sentencing hearing. Upon remand, this court cautioned:

"We emphasize that we believe this case to be exceptional. In the future, a defendant who wishes to appeal on the basis of a constitutional challenge to a

sentencing statute must ensure the findings and conclusions by the district judge are sufficient to support appellate argument, by filing of a motion invoking the judge's duty under Rule 165, if necessary." *Seward*, 289 Kan. at 721.

See Supreme Court Rule 165 (2009 Kan. Ct. R. Annot. 239).

Oehlert did not raise the issue of cruel and unusual punishment during plea negotiations, in his motion for durational departure, at his sentencing hearing, or at any other point in the record before us. Therefore, no factual findings regarding the *Freeman* factors were made by the district court upon which this court may base its analysis.

Oehlert's argument that his lifetime postrelease supervision is cruel and unusual punishment cannot be presented for the first time on appeal.

Affirmed.