NOT DESIGNATED FOR PUBLICATION

No. 117,145

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HUGO RODRIGUEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Seward District Court; LINDA P. GILMORE, judge. Opinion filed January 26, 2018.
Affirmed.

*Rick Kittel,* of Kansas Appellate Defender Office, for appellant.

*Russell Hasenbank*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., HILL, J., and WALKER, S.J.

PER CURIAM: Hugo Rodriguez was involved in an altercation in jail after he was ordered back to his cell for lockdown. A jury convicted Rodriguez of battery on a corrections officer and criminal damage to property.

Rodriguez has appealed, contending that the State's evidence wasn't sufficient to prove battery against a corrections officer. But the officer testified that Rodriguez forcefully pulled his hands away from the officer—and through the meal-tray door on Rodriguez' cell—while the officer was taking handcuffs off. The officer testified that he noticed a small cut on his right hand afterward. Since the jury determined the facts and

found the evidence sufficient to convict, we must look at the evidence on appeal in the light most favorable to the State. *State v. Frye,* 294 Kan. 364, 374-75, 277 P.3d 1091 (2012). In that light, the evidence was sufficient to convict Rodriguez of knowingly causing physical contact with the officer in a rude or angry manner—and that's battery.

Rodriguez also raises three other arguments, but we do not find them persuasive:

- He argues that he should get a new trial because the judge denied a jury request for a transcript of some testimony. But Rodriguez made no objection when the district court made its response to the jury, and the Kansas Supreme Court held that similar conduct waived the issue in *State v. Groschang*, 272 Kan. 652, 672-73, 36 P.3d 231 (2001).

- He also argues that he should get a new trial because a witness mentioned in testimony that Rodriguez was incarcerated at the county jail. But the district court denied his motion for a mistrial because the court concluded that the trial could continue without injustice to Rodriguez. And the court told the jury to disregard the testimony. Particularly since part of the charge in this case involved Rodriguez being in custody at the time of the offense, we find no abuse of discretion in the district court's decision on this point.

- He argues that the prosecution improperly struck potential jurors with Hispanic surnames, violating the United States Supreme Court's ruling in *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). But when Rodriguez' attorney challenged the State's peremptory challenges at trial, the prosecutor gave what the State said were race-neutral reasons for each potential juror's removal. At that point, Rodriguez made no attempt to demonstrate to the trial court that the State's reasons were pretextual. In this circumstance, we find no abuse of discretion in the district court's denial of Rodriguez' *Batson* challenge.

Because we find no reversible error, we affirm the district court's judgment.

2

## FACTUAL AND PROCEDURAL BACKGROUND

One evening in September 2015, Hugo Rodriguez was ordered to return to his cell for nightly lockdown at the Seward County Jail in Seward County, Kansas. He didn't want to return and refused to comply with the corrections officers. Officers were only able to take Rodriguez back to his cell after they restrained him in handcuffs.

Once Rodriguez was secure in his cell, corrections officer Jonathan Wright was told to remove Rodriguez' handcuffs through the tray hole in Rodriguez' cell door. After Wright unlocked one hand, he said that Rodriguez forcefully pulled his hands back through the tray hole, away from Wright's grasp.

Wright and three other officers—Amanda Lopez, Evan Vasquez, and Daniel Togbeola—entered Rodriguez' cell in an effort to restrain Rodriguez so they could remove his handcuffs. Rodriguez resisted the officers but was ultimately subdued after the four officers gained control over him.

After the altercation ended, Wright said he "removed [his] gloves and noticed [he] had a cut on the center of [his] hand" that was caused by the metal hinges that connect the two sides of the handcuffs. Vasquez also noticed that "[he] had a small cut on [his right] hand," although he indicated that he didn't know for sure what caused the cut.

Rodriguez was charged with two counts of battery on a county corrections officer—one for battery against Wright and one for battery against Vasquez—in violation of K.S.A. 2015 Supp. 21-5413(c)(3)(D). Since the key to the handcuffs was broken during the altercation, Rodriguez was also charged with one count of criminal damage to property under K.S.A. 2015 Supp. 21-5813(a)(1), (c)(3).

3

Rodriguez pleaded not guilty and proceeded to trial. The jury convicted Rodriguez of battery against Wright and criminal damage to property, but it couldn't agree on a verdict for the count of battery against Vasquez. As a result, the court acquitted Rodriguez on that count.

ANALYSIS

Rodriguez has raised four claims on appeal. We will discuss each claim separately.

I. *The State Presented Sufficient Evidence to Support Rodriguez' Conviction for Battery Against a Corrections Officer.*

Rodriguez claims that the State's evidence was insufficient to support his conviction for battery of a corrections officer. When a defendant challenges the sufficiency of the evidence on appeal, we must recognize that the fact-finder (here, the jury) has found in the State's favor. Out of deference to the jury's factual determinations, we look at the sufficiency claim on appeal by looking at the evidence in the light most favorable to the State. *Frye,* 294 Kan. at 374-75. We then determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt based on that evidence. 294 Kan. at 374-75.

To convict a defendant of this crime, the State had to prove that:
  (1) Rodriguez knowingly caused physical contact with Wright in a rude, insulting, or angry manner;
  (2) Rodriguez was confined in a county jail;
  (3) Wright was a county corrections officer or employee;
  (4) Wright was performing his duty when the act occurred; and
  (5) the act took place on or about September 4, 2015, in Seward County, Kansas. K.S.A. 2015 Supp. 21-5413(c)(3)(D).

4

Rodriguez only challenges the State's evidence proving the first element: that he knowingly caused physical contact with Wright in a rude, insulting, or angry manner. Rodriguez argues that he didn't cause physical contact with Wright because Wright, not Rodriguez, initiated the contact. This argument is not persuasive.

First, Rodriguez offered his restrained hands to Wright through the cell door's tray hole so Wright could remove Rodriguez' handcuffs—an act that would undoubtedly benefit Rodriguez. Then, instead of cooperating with Wright, Rodriguez chose to "yank[] back" his hands from Wright because he was "attempting to get [the handcuffs] from [Wright's] control." Further still, the jury could conclude that Rodriguez behaved this way because he was angry about being forced to go back to his cell for lockdown.

In sum, taking the evidence in the light most favorable to the State, it shows that Rodriguez extended his hands so Wright could remove the handcuffs and then forcefully pulled them away from Wright because he was angry. Thus, a reasonable fact-finder could find that he caused physical contact with Wright in a rude, insulting, or angry manner. The evidence was sufficient to convict.

II. *Rodriguez Waived Any Objection to the Court's Response to a Jury Request for a Transcript.*

Rodriguez also claims that the court denied his constitutional rights to due process and a fair trial when it denied the jury's request to review Jonathan Wright's trial testimony. Significantly, Rodriguez didn't object to the court's response to the jury's request at trial. Rodriguez suggests that he be allowed to raise the issue for the first time on appeal to "serve the ends of justice [and] prevent the denial of [his] fundamental rights." See *State v. Oehlert*, 290 Kan. 189, Syl. ¶ 1, 224 P.3d 561 (2010).

5

The State argues that Rodriguez waived his right to raise this issue on appeal, and its position is supported by our Supreme Court's ruling in *Groschang*. In that case, the court held that the defendant had waived his right to challenge the inadequacy of the district court's response to the jury's request for a read back of testimony when he failed to object and "inform the trial court of his dissatisfaction with the court's response to the jury request while the court still had a chance to correct any error." 272 Kan. at 673.

In several unpublished cases, our court has followed the *Groschang* ruling, also finding that defendants who fail to object to a court's response to a jury question are precluded from raising the issue for the first time on appeal. *State v. Pearson*, No. 114,298, 2017 WL 1367030, at *7 (Kan. App. 2017) (unpublished opinion); *State v. Pena-Gonzales*, No. 112,174, 2016 WL 1614025, at *9 (Kan. App. 2016) (unpublished opinion); *State v. Burris*, No. 106,617, 2013 WL 1729223, at *4-5 (Kan. App. 2013) (unpublished opinion). Rodriguez' claim is essentially the same as those addressed by *Groschang* and these other cases, and we reach the same result here.

Rodriguez was present in the courtroom when the jury requested a copy of the transcript. Likewise, the court gave the parties the opportunity to "make anything for the record," but Rodriguez simply responded "No, Your Honor." Since Rodriguez declined the opportunity to dispute the court's denial of the jury's request, we find that Rodriguez waived this issue for appeal. See *Groschang*, 272 Kan. at 673.

III. *Rodriguez Has Not Shown That the District Court Abused Its Discretion When It Denied His Motion for a Mistrial.*

Rodriguez' third argument is that the trial court committed reversible error by denying his motion for mistrial after the jury heard Vasquez testify that Rodriguez was a current inmate in the Seward County Jail. Rodriguez claims that this testimony undermined the purpose of having him appear in civilian clothes at trial and placed him

6

"at a distinct disadvantage at trial" because it made the jury question why Rodriquez was still in jail.

We review a trial court's mistrial ruling for an abuse of discretion. A court abuses its discretion if its decision is: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. So unless the court based its ruling on a factual or legal error, there's an abuse of discretion only if no reasonable person would agree with the court's decision. *State v. Moyer*, 302 Kan. 892, 906, 360 P.3d 384 (2015).

A district court may order a mistrial when, among other reasons, it determines that there has been prejudicial conduct that makes it impossible for the defendant to receive a fair trial. K.S.A. 22-3423(1)(c). The court must perform two steps to reach this conclusion: First, it must decide whether there was prejudicial conduct that caused a fundamental failure in the trial. *Moyer*, 302 Kan. at 906. If there was, the court's second step is to decide if it is impossible to continue the trial without injustice, or if the prejudicial conduct can somehow be mitigated with a jury instruction. 302 Kan. at 906.

A harmless-error analysis is used to decide whether it was possible for the trial to continue without injustice. This means that the State has to prove that there's no reasonable probability—in light of the entire record—that Vasquez' testimony affected the outcome of Rodriguez' trial. *State v. Logsdon*, 304 Kan. 3, 39, 371 P.3d 836 (2016).

Here, the district court followed the prescribed two-part test. It concluded that Vasquez' testimony resulted in a "fundamental failure of the proceeding." Vasquez testified that he knew Rodriguez because "Rodriguez is currently still an inmate in the Seward County Jail." This statement could have impacted Rodriguez' constitutional rights to be presumed innocent and to have a fair trial: The jury could have inferred that Rodriguez was guilty in this case because he was in jail—not based on the State's evidence against him. See *State v. Ward*, 292 Kan. 541, 557, 256 P.3d 801 (2011); *State*

7

*v. Alexander*, 240 Kan. 273, 275-76, 729 P.2d 1126 (1986); see also *State v. Fewell*, No. 115,666, 2017 WL 3324707, at \*3 (Kan. App. 2017) (unpublished opinion).

But just because Vasquez' testimony was prejudicial doesn't mean that the testimony made it impossible to proceed with the trial without injustice to Rodriguez. Based upon our review of the record, we agree with the trial court's conclusion that it was still possible to have a fair trial and conclude that there is no reasonable possibility that Vasquez' testimony affected the outcome of the trial. See *Ward*, 292 Kan. 541, Syl. ¶ 9.

We find three aspects of the record significant. First, Vasquez' statement about Rodriguez' current incarceration was both isolated and unsolicited. See *State v. Rinck*, 256 Kan. 848, 851, 888 P.2d 845 (1995) (finding the statement regarding a defendant's previous arrests was harmless because it was "completely unsolicited by the State"). Second, the court instructed the jury to disregard Vasquez' statement. Such instructions are generally considered sufficient to eliminate any potential prejudice created by an improper statement since the jury is presumed to follow the court's instruction. See *State v. Stafford*, 255 Kan. 807, 816, 878 P.2d 820 (1994); *State v. Coleman*, No. 110,430, 2014 WL 4082110, at \*4 (Kan. App. 2014) (unpublished opinion). Third, even if the court hadn't told the jury to disregard Vasquez' statement, Rodriguez' current incarceration wouldn't necessarily have had a bearing on the current proceedings. The jury already knew Rodriguez had been in jail—he was being tried for crimes committed while incarcerated, and there was nothing in the testimony to indicate one way or the other to the jury whether Rodriguez had been released.

In this case, the district court properly determined that the trial could continue without prejudice to Rodriguez. The district court did not abuse its discretion by denying Rodriguez' motion for mistrial.

IV. *Rodriguez Has Not Shown an Abuse of Discretion in the District Court's Handling of His* Batson *Challenges.*

Finally, Rodriguez contends that the court erred when it denied his five *Batson* challenges against the State's exercise of peremptory challenges to strike potential jury members with Hispanic surnames. Rodriguez argues that his convictions should be reversed because the State's proffered reasons for five of its peremptory strikes were pretextual and demonstrated purposeful discrimination.

The Equal Protection Clause prohibits prosecutors from exercising peremptory strikes against potential jurors solely because of the juror's race. *Batson v. Kentucky*, 476 U.S. 79, 97-98, 106 S. Ct. 1712, 1724, 90 L. Ed. 2d 69 (1986). A defendant's challenge to the State's exercise of a peremptory strike under *Batson* is known as a "*Batson* challenge." See *State v. Dupree*, 304 Kan. 43, 57, 371 P.3d 862 (2016). When a defendant asserts a *Batson* challenge, the court must follow a three-step analysis—each of which is subject to its own standard of review. *Dupree*, 304 Kan. at 57.

First, a defendant must make a prima facie showing that the prosecutor exercised peremptory challenges solely on the basis of race. *Dupree*, 304 Kan. at 57. This step involves a question of law over which appellate courts have unlimited review. *Dupree*, 304 Kan. at 57. The second step requires the State to give race-neutral reasons for striking the prospective jurors. *Dupree*, 304 Kan. at 58. The State's reason for the strike will be deemed race-neutral unless "discriminatory intent is inherent in the [State's] explanation." *State v. Kettler*, 299 Kan. 448, 462, 325 P.3d 1075 (2014). The third and final step is for the court to determine whether the defendant carried his or her burden of proving purposeful discrimination. *Dupree*, 304 Kan. at 58. An appellate court will only reverse the court's ultimate ruling on a *Batson* challenge only if it resulted from an abuse of discretion. *Dupree*, 304 Kan. at 58.

Rodriguez doesn't challenge the court's decisions under the first or second steps. For the first step, neither party disputes whether there was a prima facie showing that the State purposefully discriminated on the basis of race. Likewise, the second step was satisfied when the State provided what the prosecutor said were race-neutral explanations for its strikes. Rather, Rodriguez argues the court erred in performing the third *Batson* step by finding that he failed to prove the State's alleged race-based discrimination.

Rodriguez alleges that the court committed two distinct errors in carrying out the third step. First, Rodriguez said the court failed to let Rodriguez respond to the State's race-neutral reasons. Our record does not suggest the district court did anything to cut off Rodriguez' ability to respond to the State's explanation about why it struck these potential jurors. Rodriguez simply failed to dispute the State's race-neutral explanations or otherwise further pursue his *Batson* challenges. Although Rodriguez carried the burden of making a prima facie showing that the State unlawfully struck jurors based on race, he didn't dispute the State's race-neutral reasons and made no indication that he wanted to further pursue his claims. Further still, Rodriguez failed to object to the court's alleged failure to perform the third *Batson* step. In short, nothing in the record indicates that the court erred by not giving Rodriguez the opportunity to rebut the State's explanations behind its five challenged strikes. By not attempting to rebut the State's nondiscriminatory reasons, Rodriguez waived his *Batson* challenges. See *State v. Angelo*, 287 Kan. 262, 277-78, 197 P.3d 337 (2008) (relying on several federal appellate decisions to support its decision that a defendant forfeits a *Batson* challenge by not contesting the prosecutor's explanations).

Rodriguez also argues that the court abused its discretion by not determining—even without argument from him—that the State's race-neutral reasons were "merely pretextual reasons for racial discrimination or were overridden by the racial action of striking so many Hispanic potential jurors." Under the abuse-of-discretion standard of review applicable here, we can find the district court abused its discretion by denying Rodriguez' *Batson* challenges only if the decision is based on an error of fact or law, or if

10

no other court would've reached the same conclusion. *Ward*, 292 Kan. 541, Syl. ¶ 3; *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009); *State v. Gann*, No. 107,595, 2013 WL 4778151, at *4 (Kan. App. 2013) (unpublished opinion).

Here, the State provided race-neutral reasons for each of its challenged peremptory strikes. Even on appeal, Rodriguez challenges only some of the specific reasons. For example, the State's reason for striking juror Daisy C. was that she had previously been in jail and felt she had been wrongly arrested. Rodriguez' brief does not provide any argument that this was a pretextual strike. As an example of the challenges Rodriguez does argue on appeal, the State struck Christopher C. because he had a brother who was also in the pool of potential jurors. Rodriguez notes that another potential juror who did not have a Hispanic surname also knew Christopher C. and his brother. But there's an obvious difference between knowing someone and being a person's sibling. We do not find any abuse of discretion in the district court's failure to dismiss out of hand—without any argument from Rodriguez—the State's proffered justifications for these strikes.

The district court's judgment is affirmed.